RECEIVED

FEB 22 2016
AT 8:30_____M
WILLIAM T. WALSH, CLERK

RA/2013R01088

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Esther Salas |
| v. | : | Criminal No. 16-73 |
| ARNALDO ECHEVARRIA | : | 8 U.S.C. § 1324(a)(1)(A)(iii) |
| | : | 8 U.S.C. § 1324(a)(1)(B)(ii) |
| | : | 18 U.S.C. § 201(b)(2) |
| | : | 18 U.S.C. § 981(a)(1)(C) |
| | : | 18 U.S.C. § 982(a)(6) |
| | : | 18 U.S.C. § 1001 |
| | : | 28 U.S.C. § 2461(c) |

INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges:

COUNTS 1 TO 7
(Agreeing to Receive and Receiving Bribes)

1.     At all times relevant to Counts 1 to 7 of this Indictment:

       a.     Defendant ARNALDO ECHEVARRIA ("ECHEVARRIA") resided in Somerset, New Jersey, and was employed by Immigration and Customs Enforcement ("ICE") as a Deportation Officer. ICE was an agency within the United States Department of Homeland Security ("DHS"), and was in charge of enforcing immigration and customs laws. Defendant ARNALDO ECHEVARRIA's official duties entailed, among other things, identifying, locating, arresting, and removing individuals not lawfully present in the United States ("undocumented immigrants") and supervising certain undocumented

immigrants who had not yet been deported.

      b.    Defendant ARNALDO ECHEVARRIA was obligated to report any offer of money or other thing of value to ICE, and to avoid any action which might result in, or reasonably create the appearance of, giving preferential treatment to a private individual in connection with official government duties and responsibilities.

      c.    Pursuant to federal laws, and regulations and procedures, an undocumented immigrant who was subsequently encountered by immigration authorities was issued a deportation order, which ordered that individual deported from the United States. While under an order of deportation, an undocumented immigrant was placed under the supervision of a Deportation Officer. During this period of supervision, the individual could apply for and receive an Employment Authorization Document ("EAD"), which permitted the individual to legally work in the United States for a period of one year and which could be renewed annually.

      d.    The Secretary of DHS designated certain countries for "protected status," based upon environmental disaster, ongoing armed conflict, or other extraordinary conditions that made it unsafe for individuals to return to the designated countries. A national of the designated country residing in the United States was permitted to apply for temporary protected status, and if the application was granted, the national was permitted to lawfully remain in the United States and to obtain and renew an EAD.

   e. Individuals 1, 2, and 3 were undocumented immigrants who resided in Red Bank, New Jersey.

   f. Individual 4 was an undocumented immigrant who resided in Red Bank, New Jersey, and Ocean Township, New Jersey.

   g. Individual 5 was an undocumented immigrant who resided in Long Branch, New Jersey.

   h. Individual 6 was an undocumented immigrant who resided in Tinton Falls, New Jersey.

   i. Individual 7 was a relative of Individual 6 and a United States citizen who resided in Tinton Falls, New Jersey.

   j. Individual 8 was an undocumented immigrant who resided in North Plainfield, New Jersey.

  2. Between approximately 2012 and 2014, ECHEVARRIA solicited, demanded, accepted, and received approximately $78,000 in cash payments, and sex, from undocumented immigrants, in exchange for which ECHEVARRIA agreed to obtain EADs for these individuals, to renew the EADs on an annual basis, and take other official actions on their behalf. In order to conceal these undocumented immigrants from immigration authorities, defendant ARNALDO ECHEVARRIA placed them under his supervision and falsely stated that certain of them had been granted temporary protected status. Defendant ARNALDO ECHEVARRIA did not report to ICE his receipt of things of value from these individuals.

**Individual 1**

3.  In or about 2012, defendant ARNALDO ECHEVARRIA agreed to obtain an EAD for Individual 1 in exchange for a cash payment of approximately $16,000.

4.  In or about February 2012, in Red Bank, New Jersey, defendant ARNALDO ECHEVARRIA accepted two cash payments of approximately $8,000 each from Individual 1.

5.  In or about 2012, defendant ARNALDO ECHEVARRIA demanded and received sex from Individual 1.

6.  In exchange for the cash payments and sex, defendant ARNALDO ECHEVARRIA subsequently provided Individual 1 with an EAD for an initial one-year period, from on or about April 16, 2012 to on or about April 15, 2013, and renewed the EAD for an additional one-year period, from on or about July 18, 2013 to on or about July 17, 2014.

7.  Defendant ARNALDO ECHEVARRIA also placed Individual 1 on the temporary protected status docket, even though Individual 1 had never applied for, or received, such status.

**Individual 2**

8.  In or about May 2012, defendant ARNALDO ECHEVARRIA agreed to obtain an EAD for Individual 2 in exchange for a cash payment of approximately $16,000.

9.  Between in or about May 2012 and in or about July 2012, in Red

Bank, New Jersey, defendant ARNALDO ECHEVARRIA accepted two cash payments of approximately $8,000 each from Individual 2.

10. In exchange for the cash payments, defendant ARNALDO ECHEVARRIA subsequently provided Individual 2 with an initial EAD for a one-year period, from on or about July 9, 2012 to on or about July 9, 2013, and renewed the EAD for an additional one-year period, from on or about September 17, 2013 to on or about September 16, 2014.

11. Defendant ARNALDO ECHEVARRIA also placed Individual 2 on the temporary protected status docket, even though Individual 2 had never applied for, or received, such status.

### Individual 3

12. In or about May 2012, defendant ARNALDO ECHEVARRIA agreed to obtain an EAD for Individual 3 in exchange for a cash payment of approximately $16,000.

13. Between in or about July 2012 and in or about September 2012, in Red Bank, New Jersey, defendant ARNALDO ECHEVARRIA accepted two cash payments of approximately $8,000 each from Individual 3.

14. In exchange for the cash payments, defendant ARNALDO ECHEVARRIA subsequently provided Individual 3 with an EAD for a one-year period, from on or about October 6, 2012 to on or about October 5, 2013, and renewed the EAD for an additional one-year period, from on or about December 10, 2013 to on or about December 9, 2014.

15. Defendant ARNALDO ECHEVARRIA also placed Individual 3 on the temporary protected status docket, even though Individual 3 had never applied for, or received, such status.

**Individual 4**

16. In or about August 2012, defendant ARNALDO ECHEVARRIA agreed to obtain an EAD for Individual 4 in exchange for a cash payment of approximately $15,000.

17. In or about September 2012, in Hazlet, New Jersey, defendant ARNALDO ECHEVARRIA accepted a cash payment of approximately $7,500 from Individual 4.

18. Defendant ARNALDO ECHEVARRIA subsequently determined that he was unable to provide Individual 4 with an EAD. Rather than repay Individual 4 the $7,500 cash payment that defendant ARNALDO ECHEVARRIA had received, ECHEVARRIA told Individual 4, in sum and substance, to find another individual to take Individual 4's place in the illicit transaction and obtain repayment from that individual.

**Individual 5**

19. In or about 2012, defendant ARNALDO ECHEVARRIA agreed to obtain an EAD for Individual 5, in place of Individual 4, in exchange for which defendant ARNALDO ECHEVARRIA would retain the $7,500 accepted by him from Individual 4 and would receive a cash payment of an additional $7,500 from Individual 5.

20. In or about 2012, in Long Branch, New Jersey, defendant ARNALDO ECHEVARRIA accepted a cash payment of approximately $4,000 from Individual 5's relative, acting on behalf of Individual 5.

21. Defendant ARNALDO ECHEVARRIA subsequently provided Individual 5 with an EAD for a one-year period, from on or about October 17, 2013 to on or about October 16, 2014.

22. In or about 2014, in Long Branch, New Jersey, defendant ARNALDO ECHEVARRIA accepted the final cash payment of approximately $3,500 from Individual 5.

23. Defendant ARNALDO ECHEVARRIA also placed Individual 5 on the temporary protected status docket, even though Individual 5 had never applied for, or received, such status.

**Individuals 6 and 7**

24. In or about 2013, defendant ARNALDO ECHEVARRIA agreed with Individuals 6 and 7 to obtain an EAD for Individual 6 in exchange for a cash payment of approximately $15,000.

25. In or about September 2013, in Hazlet, New Jersey, defendant ARNALDO ECHEVARRIA accepted a cash payment of approximately $7,500 from Individual 6.

26. On or about December 2, 2013, defendant ARNALDO ECHEVARRIA picked up Individual 6 from Individual 6's place of employment, drove Individual 6 to Individual 6's residence in Tinton Falls, New Jersey, and accepted a second

cash payment of approximately $7,500 from Individual 6.

27. Though defendant ARNALDO ECHEVARRIA retained the $15,000 in cash payments that he had received from Individual 6, he never provided Individual 6 with an EAD.

28. On or about January 10, 2015, in West Long Branch, New Jersey, in a recorded conversation, defendant ARNALDO ECHEVARRIA told Individual 7, in sum and substance, that he would repay the $15,000 that he had received from Individual 6 if he was unable to secure an EAD for Individual 6. Defendant ARNALDO ECHEVARRIA also told Individual 7 that he had concealed from immigration authorities the immigration files pertaining to the individuals from whom he had previously received cash payments.

**Individual 8**

29. In or about 2011, in North Plainfield, New Jersey, defendant ARNALDO ECHEVARRIA began a sexual relationship with Individual 8, instructing Individual 8, in sum and substance, to treat him properly because only defendant ARNALDO ECHEVARRIA could help Individual 8 with Individual 8's immigration status.

30. In or about 2011, Individual 8 became pregnant with defendant ARNALDO ECHEVARRIA's child. Defendant ARNALDO ECHEVARRIA encouraged Individual 8 to have an abortion. After Individual 8 delivered the baby, defendant ARNALDO ECHEVARRIA instructed Individual 8, in sum and substance, that no one could find out that defendant ARNALDO ECHEVARRIA

was the child's father.

31. From in or about 2012 to in or about 2014, defendant ARNALDO ECHEVARRIA visited Individual 8 at Individual 8's residence and renewed Individual 8's EAD in exchange for sex. On those occasions, defendant ARNALDO ECHEVARRIA told Individual 8, in sum and substance, to ensure that no one else was at Individual 8's residence.

32. In or about the dates and at the locations set forth below, in the District of New Jersey, and elsewhere, the defendant,

ARNALDO ECHEVARRIA,

being an employee of ICE in Newark, New Jersey, directly and indirectly, did corruptly demand, seek, receive, accept, and agree to receive and accept things of value personally, namely United States currency and sex, as set forth below, in return for (A) being influenced in the performance of official acts; (B) being influenced to commit and aid in committing, and to collude in, and allow, and to make an opportunity for the commission of a fraud on the United States; and (C) being induced to do and omit to do acts in violation of his official duties:

| Count | Date(s) of payments | Location | Approximate Amount and/or Type of Payment(s) | Payor |
|---|---|---|---|---|
| 1 | February 2012 | Red Bank, New Jersey | $16,000 and sex | Individual 1 |
| 2 | May 2012 to July 2012 | Red Bank, New Jersey | $16,000 | Individual 2 |
| 3 | July 2012 to September 2012 | Red Bank, New Jersey | $16,000 | Individual 3 |
| 4 | August 2012 to September 2012 | Hazlet, New Jersey | $15,000 ($7,500 received) | Individual 4 |

| 5 | 2012 to 2014 | Long Branch, New Jersey | $7,500 | Individual 5 |
| 6 | 2013 | Tinton Falls, New Jersey | $15,000 | Individual 6 |
| 7 | 2011 to 2014 | North Plainfield, New Jersey | sex | Individual 8 |

In violation of Title 18, United States Code, Sections 201(b)(2) and 2.

## COUNT 8
### (Harboring an Alien)

1. The allegations set forth in paragraphs 1(a) through 1(b) of Counts 1 to 7 of this Indictment are realleged and incorporated as if set forth herein.

2. At all times relevant to Count 8 of this Indictment:

   a. Individual 9 was an undocumented immigrant who resided in Newark, New Jersey. Individual 9 was defendant ARNALDO ECHEVARRIA's girlfriend. Individual 9 possessed a Pennsylvania state identification that bore Individual 9's photograph along with the name and identification of another individual (the "Alias").

   b. Defendant ARNALDO ECHEVARRIA owned a hair salon located in West Orange, New Jersey (the "Salon").

3. On or about December 4, 2012, defendant ARNALDO ECHEVARRIA submitted for approval to his ICE superiors a form entitled "Request to Engage in Outside Employment or Activity" (the "Form"). On the Form, defendant ARNALDO ECHEVARRIA certified that he would own a hair salon and that "there would be no conflicts of interest involving ICE matters." Defendant ARNALDO ECHEVARRIA answered "None!" in response to a question asking him to explain whether the proposed outside employment would, among other things, involve: (a) "dealing or transacting business with aliens;" (b) "professional interaction with other employees of the Department of Homeland Security or with individuals or entities with whom you have or may come into official contact on customs or immigration matters;" or (c) "any activities which might create an

appearance of impropriety, conflict with or infringe on your duties as an employee of U.S. Immigration and Customs Enforcement, or otherwise reflect negatively on ICE." Defendant ARNALDO ECHEVARRIA signed the Form and certified that the statements on the Form were "complete and correct" to the best of his knowledge. Based in part upon the information provided by defendant ARNALDO ECHEVARRIA on the Form, ICE approved his request to open the Salon.

  4. In or about 2013, defendant ARNALDO ECHEVARRIA opened the Salon. Defendant ARNALDO ECHEVARRIA employed Individual 9 as the manager of the Salon, but never disclosed to ICE that Individual 9 was an undocumented immigrant or that Individual 9 possessed a false and fraudulent identification using the name and date of birth of another individual.

  5. In an attempt to conceal, harbor, and shield Individual 9 from detection by immigration authorities:

    a. On or about July 30, 2012, defendant ARNALDO ECHEVARRIA conducted law enforcement database searches for the name and date of birth associated with Individual 9's alias.

    b. Defendant ARNALDO ECHEVARRIA signed the lease for Individual 9's residence and maintained the cable and electric bills for Individual 9's residence in his own name rather than the name of Individual 9.

    c. On a daily basis, defendant ARNALDO ECHEVARRIA transported Individual 9 to and from the Salon.

    d. Defendant ARNALDO ECHEVARRIA paid Individual 9 and the other employees of the Salon in cash.

6.      Between in or about July 2012 and in or about December 2014, in Essex County, in the District of New Jersey, and elsewhere, the defendant,

ARNALDO ECHEVARRIA,

did knowingly and in reckless disregard of the fact that an alien, namely Individual 9, had come to, entered and remained in the United States in violation of law, conceal, harbor, and shield from detection, and attempt to conceal, harbor, and shield from detection such alien in any place.

In violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and 1324(a)(1)(B)(ii).

## COUNT 9
### (False Statement)

1. The allegations set forth in paragraphs 1(a) through 1(b) of Counts 1 to 7 of this Indictment and paragraphs 1 through 5 of Count 8 of this Indictment are realleged and incorporated as if set forth herein.

2. On or about December 4, 2012, in Essex County, in the District of New Jersey, and elsewhere, the defendant,

### ARNALDO ECHEVARRIA,

in a matter within the jurisdiction of the executive branch of the United States government, specifically DHS ICE, did knowingly and willfully (1) falsify, conceal, and cover up by a trick, scheme, and device a material fact; (2) make a material false, fictitious, and fraudulent statement and representation; and (3) make and use a false writing and document knowing the same to contain a materially false, fictitious and fraudulent statement and entry.

In violation of Title 18, United States Code, Section 1001.

## FORFEITURE ALLEGATION AS TO COUNTS 1 TO 7

1. The allegations contained in Counts 1 to 7 of this Indictment are hereby realleged and incorporated by reference for the purpose of noticing forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. The United States hereby gives notice to defendant ARNALDO ECHEVARRIA, that upon conviction of the offenses charged in Counts 1 to 7 of this Indictment, the United States will seek forfeiture aggregating to the amount of $78,000 in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which requires any person convicted of such offenses to forfeit any property constituting or derived from proceeds traceable to such offenses.

## FORFEITURE ALLEGATION AS TO COUNT 8

1.     The allegations contained in Count 8 of this Indictment are hereby realleged and incorporated by reference for the purpose of noticing forfeiture pursuant to Title 18, United States Code, Section 982(a)(6).

2.     The United States hereby gives notice to defendant ARNALDO ECHEVARRIA, that upon conviction of the offense charged in Count 8 of this Indictment, the United States will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(6), which requires any person convicted of such an offense to forfeit any property real and personal constituting or derived from or traceable to the proceeds obtained directly or indirectly from the commission of such offense.

## Substitute Assets Provision

1. If any of the above-described forfeitable property, as a result of any act or omission of defendant ARNALDO ECHEVARRIA:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of defendant ARNALDO ECHEVARRIA up to the value of the forfeitable property described in paragraph 2 of each of the Forfeiture Allegations.

A TRUE BILL

_____
FOREPERSON

*Paul J. Fishman/rah*
PAUL J. FISHMAN
UNITED STATES ATTORNEY

17

**CASE NUMBER: 16- 73 (ES)**

# United States District Court
# District of New Jersey

**UNITED STATES OF AMERICA**

v.

**ARNALDO ECHEVARRIA**

# INDICTMENT FOR

8 U.S.C. § 1324(a)(1)(A)(iii)
8 U.S.C. § 1324(a)(1)(B)(ii)
18 U.S.C. § 201(b)(2)
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(6)
18 U.S.C. § 1001
28 U.S.C. § 2461(c)

**PAUL J. FISHMAN**
*U.S. ATTORNEY*
*NEWARK, NEW JERSEY*

RAHUL AGARWAL
*ASSISTANT U.S. ATTORNEY*
(973) 297-4395

USA-48AD 8
(Ed. 1/97)